UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LIGHTHOUSE RANCH FOR BOYS, INC.** | **CIVIL ACTION** |
| **VERSUS** | **No. 22-1988** |
| **SAFEPOINT INSURANCE COMPANY** | **SECTION I** |

## ORDER & REASONS

Before the Court are three motions filed by defendant Safepoint Insurance Company ("SafePoint"): a motion to confirm appraisal award,[1] a motion for partial summary judgment,[2] and a motion for summary judgment.[3] Plaintiff Lighthouse Ranch for Boys ("Lighthouse Ranch") opposes the motions.[4] For the reasons below, the Court denies the motions.

### I.     FACTUAL BACKGROUND

This is an insurance dispute. SafePoint insured Lighthouse Ranch's property, which was damaged by both Hurricane Ida in August 2021 and Hurricane Nicholas in September 2021.[5] The insurance contract between the parties contains an appraisal provision, which states:

> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss.

---

[1] R. Doc. No. 37.
[2] R. Doc. No. 38.
[3] R. Doc. No. 40.
[4] R. Doc. Nos. 41, 42, 44.
[5] *E.g.*, R. Doc. Nos. 38, at 1; 42, at 1.

> If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party. Each party will:
>
> a. Pay its chosen appraiser; and
> b. Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we will still retain our right to deny the claim.[6]

On December 9, 2021, Lighthouse Ranch informed SafePoint that the insured property had been damaged by said hurricanes.[7] SafePoint's field adjuster inspected the property and estimated the repair costs at $53,355.36.[8] Lighthouse Ranch then provided SafePoint with an estimate of repairs totaling approximately $2,400,000.00.[9] SafePoint then invoked appraisal.[10] Both parties appointed their appraisers, who estimated the loss to be $120,029.34.[11] SafePoint then issued payment to Lighthouse Ranch in the amount of $38,569.12, representing the amount of the award agreed to by the appraisers less deductibles, depreciation, and prior payments.[12]

---

[6] R. Doc. No. 37-5, at 54. This appraisal provision appears in the "Louisiana Changes" addendum to the policy. The main policy document contains an appraisal provision that states that the appraisal decision "*will* be binding." *Id.* at 44 (emphasis added). The parties agree, however, that the non-binding appraisal provision is the one that governs the agreement. R. Doc. No. 41, at 3; R. Doc. No. 52, at 1.
[7] R. Doc. No. 38-4, ¶ 2; R. Doc. No. 42-1, ¶ 2.
[8] R. Doc. No. 38-4, ¶ 3; R. Doc. No. 42-1, ¶ 3.
[9] R. Doc. No. 38-4, ¶ 4; R. Doc. No. 42-1, ¶ 4.
[10] R. Doc. No. 38-4, ¶ 5; R. Doc. No. 42-1, ¶ 5.
[11] R. Doc. No. 38-4, ¶¶ 7–9; R. Doc. No. 42-1, ¶¶ 7–9.
[12] R. Doc. No. 38-4, ¶ 10; R. Doc. No. 42-1, ¶ 10.

Lighthouse Ranch then filed this lawsuit, alleging that SafePoint underpaid its claims and paid them too late.[13] Lighthouse Ranch has alleged claims for breach of the duty of good faith and fair dealing, as imposed by Louisiana law.[14]

## II. LEGAL STANDARDS

### a. Motion to Confirm Appraisal Award

"'Appraisal clauses . . . are enforceable under Louisiana law,' and are interpreted according to normal Louisiana principles of contract interpretation." *Spann v So. Fidelity Ins. Co.*, No. 13–6134, 2014 WL 4443527, at *2 (E.D. La. Sept. 9, 2014) (Africk, J.) (quoting *St. Charles Par. Hosp. Serv. Dist. No. 1 v. U. Fire & Cas. Co.*, 681 F.Supp.2d 748, 753 (E.D. La. 2010) (Vance, J.)). "'Appraisal provisions in insurance contracts are strictly construed'" and "'[a]n appraisal award issued under an insurance policy is binding only if the appraisers have performed the duties required of them by the policy, which is the law between the contracting parties.'" *Id.* (quoting *St. Charles Par. Hosp.*, 681 F. Supp. at 754) (further citations and quotations omitted).

### b. Motion for Summary Judgment

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, a court determines that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always

---

[13] *See generally* R. Doc. No. 1.
[14] *Id.*

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of a material fact; it need only point out the absence of evidence supporting the other party's case. *Id.*; *see also Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195–96 (5th Cir. 1986) ("There is no sound reason why conclusory allegations should suffice to require a trial when there is no evidence to support them even if the movant lacks contrary evidence.").

Once the party seeking summary judgment carries that burden, the nonmoving party must come forward with specific facts showing that there is a genuine dispute of material fact for trial. *See Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Rather, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the nonmovant fails to meet their burden of showing a genuine issue for trial that could support a judgment in favor of the nonmovant, summary judgment must be granted. *See Little*, 37 F.3d at 1075–76.

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible . . . the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (citations omitted). The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue. *See Anderson*, 477 U.S. at 248. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." *Id.* at 255.

### III. ANALYSIS

#### a. Motion to Confirm Appraisal Award

Lighthouse Ranch argues that SafePoint's motion to confirm the appraisal award should be denied because the appraisal provision in the contract explicitly states that "any outcome of the appraisal will not be binding on either party."[15] SafePoint agrees that the operative appraisal provision in the contract is non-binding,[16] but nevertheless asserts that "the appraisal award is enforceable" because "the appraisers performed their duties under the Policy."[17]

---

[15] R. Doc. No. 41, at 4.
[16] In its motion, SafePoint produced an appraisal provision that stated that "[a] decision agreed to by any two [of the appraisers or umpire] *will* be binding." R. Doc. No. 37-1, at 4 (emphasis added). However, in its reply to Lighthouse Ranch's opposition, SafePoint states that an incorrect version of the appraisal provision was used in its original motion "due to a clerical error" and it concedes that "the appraisal award is not binding." R. Doc. No. 52, at 2, 3.
[17] R. Doc. No. 52, at 3.

5

SafePoint emphasizes that "[t]he burden of demonstrating that [an appraisal] award should not be confirmed must fall upon the party challenging it," and that that burden requires a showing "that the appraiser's honesty or integrity is suspect." *Spann*, 2014 WL 4443527, at *2. The cases that apply these principles, though, do so in the context of contractual provisions that indicate that the appraisal award is meant to set the amount of contractual loss. *E.g.*, *id.* at *1 (interpreting appraisal provision that stated that the appraisal award "shall determine the amount of actual cash value and loss"); *Dufrene v. Certain Interested Underwriters at Lloyds of London*, 91 So.3d 397, 399 (La. Ct. App. 2012) (interpreting appraisal provision that stated "[a] decision agreed to by any two will be binding"); *St. Charles Parish Hosp.*, 681 F. Supp. 2d at 752 (interpreting appraisal provision that stated "[a] decision agreed to by any two will be binding"); *Prien Props., LLC v. Allstate Ins. Co.*, No. 07-845, 2008 WL 1733591, at *2 (W.D. La. Apr. 14, 2008) ("The Policy states that 'a decision agreed to by any two will be binding with regard to the value of the property or the amount of the loss only.' Thus, provided that both parties fulfilled the contractual conditions of the Policy, the appraisal award is binding.").

Cases in the Western District of Louisiana have held that an appraisal provision like that at issue here, which explicitly states that an appraisal award is non-binding, does not set the contractual amount of loss and cannot be confirmed as SafePoint requests. *Myers v. Allied Trust Ins. Co.*, 21-2734, 2022 WL 2162588, at *2 (W.D. La. June 15, 2022) (reviewing an appraisal provision substantially identical to that at issue here and concluding "that because the appraisal is not binding, [ ] the

6

appraisal award cannot be confirmed"); *accord LeBlanc v. Allied Trust Ins. Co.*, 21-1928, 2022 WL 4597863, at *3 (W.D. La. Sept. 29, 2022) (same).

Neither party identifies, and this Court has not located, any case in which a court confirmed an appraisal award when the operative appraisal provision explicitly stated that the appraisal outcome would not be binding. SafePoint insists that the Court should "enforce" the appraisal award,[18] but a determination that the appraisal award is binding as to the amount of contractual loss would be in direct contravention of the insurance policy, "which is the law between the contracting parties." *Spann*, 2014 WL 4443527, at *2.

SafePoint alternatively argues that because the policy insures against fire, and therefore incorporates Louisiana's statutory standard fire policy, La. Rev. Stat. § 22:1311(F)(2), the appraisal provision of that statute applies. In pertinent part, the statute provides that an appraisal award "shall determine the amount of actual cash value and loss." The Court rejects this argument for several reasons.

First, the above-cited cases that declined to confirm non-binding appraisal awards also rejected the standard fire policy argument, determining "that fire policies and homeowner's policies are two separate and distinct types of insurance." *Myers*, 2022 WL 2162588, at *1 (citing *GeoVera Specialty Ins. Co. v. Joachin*, 18-7577, 2019

---

[18] SafePoint argues that the appraisal award is enforceable because appraisal awards do not divest courts of jurisdiction. R. Doc. No. 52, at 5 (referring to La. Rev. Stat. § 22:868, which provides that "no insurance contract" may "depriv[e] the courts of this state of the jurisdiction of action against the insurer"). This argument does not cure the fact that confirming the appraisal award would be in direct conflict with the contractual language.

WL 8273471 (E.D. La. June 28, 2019) (Brown, C.J.)); *LeBlanc*, 2022 WL 4597863, at *3 (noting disagreement as to whether the standard fire policy applies "to non-fire losses when it is contained in a homeowner's policy," but declining to confirm the appraisal award due to express policy language "stat[ing] that appraisal outcomes are not binding").

Second, the extent to which the standard fire policy applies to and alters the homeowner's policy is unclear. In a 1978 case, the Louisiana Supreme Court held that the standard fire policy's prescriptive period applied to claims brought pursuant to a homeowners insurance policy. *Grice v. Aetna Cas. & Sur. Co.*, 359 So.2d 1288, 1291 (La. 1978). However, in a later case, the same court suggested "that a fire policy . . . is entirely distinct from a homeowners' policy." *Landry v. La. Citizens Prop. Ins. Co.*, 983 So.2d 66, 74 n.10 (La. 2008). Therefore, both "[t]he Fifth Circuit and other district courts have acknowledged that there is uncertainty on whether statutory provisions related to fire insurance policies are applicable to homeowners' insurance policies." *GeoVera Specialty Ins. Co.*, 2019 WL 8273471, at *8 (collecting cases).

Third, principles of Louisiana contract interpretation weigh against SafePoint's argument. Under Louisiana law, "contracts should be interpreted to give effect to each provision," and "specific provisions control over general." *Entergy Gulf States La., LLC v. La. Generating, LLC*, No. 14-385, 2021 WL 711470, at *2 (M.D. La. Feb. 23, 2021) (citations and quotations omitted). Louisiana law further directs that the Court must strictly construe the appraisal provision. *Spann*, 2014 WL 4443527, at *2. Similarly, ambiguous provisions in insurance contracts are to be construed in

8

favor of the insured. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 207 (5th Cir. 2007) (citing *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994)). The policy specifically provides that the appraisal award is non-binding. To the extent that the standard fire policy's statement that the appraisal "shall determine the amount of loss" is in tension with that explicit statement, that tension must be resolved in favor of the Lighthouse Ranch.

SafePoint further relies on an amendment to La. Rev. Stat. § 22:1892 that requires all "[r]esidential property insurance polices [to] contain" an appraisal provision providing that "a written agreement signed by the umpire and either party's appraiser shall set the amount of loss." La. Rev. Stat. § 22:1892(G). However, even if the language of this amendment was applicable to this case, a finding this Court does not make, this provision was made effective "[o]n or after January 1, 2022," and the coverage period of the contract at issue here commenced on June 5, 2021.[19] *See* La. Rev. Stat. § 22:1982(G) (2021).

Finally, SafePoint relies on Louisiana Department of Insurance Directive 173, which provides "that all residential property insurance policies contain the appraisal provision that is set forth in [the] newly enacted" version of § 22:1892(G).[20] However, that directive was effective January 25, 2022, and, as noted, the policy at issue went into effect in June 2021. Moreover, the version of Directive 173 in effect at the time of the policy's inception specifically provided that "[a]n appraisal provision that states

---

[19] R. Doc. No. 37-5, at 18.
[20] *Directive 173*, LA. DEP'T OF INS., (Jan. 25, 2022) (available at https://www.ldi.la.gov/onlineservices/documentsearch/).

9

that the appraisal process is 'binding' or 'final' or uses similar language is not lawful in Louisiana."[21]

The Court is persuaded that, under these circumstances, the appraisal award should not be confirmed. Because the contract clearly states that the appraisal award "shall not be binding," the Court must give effect to that provision. The motion to confirm the appraisal award will therefore be denied.

### b. Motions for Summary Judgment

#### i. *Motion for Partial Summary Judgment*

In its motion for partial summary judgment, SafePoint's asserts that Lighthouse Ranch's claims for penalties and attorneys fees should be dismissed because "SafePoint invoked the appraisal process to resolve [the] dispute [as to the amount of loss] in good faith."[22] In opposition, Lighthouse Ranch argues that genuine issues of material fact preclude summary judgment, specifically arguing that SafePoint violated § 22:1973(B)(1), which provides that an insurer breaches its duty of good faith if it knowingly "[m]isrepresent[s] pertinent facts or insurance policy provisions relating to any coverages at issue."[23] Lighthouse Ranch argues that SafePoint's reliance on the binding version of the appraisal provision, which both parties agree is inapplicable, "has caused Lighthouse material harm by delaying resolution of the matter."[24]

---

[21] R. Doc. No. 41-2, at 3.
[22] R. Doc. No. 38-1, at 7.
[23] R. Doc. No. 42, at 2.
[24] *Id.* at 5.

10

The Court concludes that summary judgment is not warranted. It is undisputed that SafePoint has paid the amount of damages identified in the appraisal. However, SafePoint states that "[o]n or about December 17, 2021, a field adjuster assigned by SafePoint inspected the [p]roperty" and " subsequently prepared an estimate for [ ] repairs totaling $53,366.36 and submitted this estimate to SafePoint."[25] SafePoint further states that "[t]hereafter, SafePoint received" Lighthouse Ranch's $2.4 million estimate, and SafePoint then invoked appraisal.[26] However, SafePoint does not state whether the $53,366.36 amount was paid and, if so, when it was paid.

As SafePoint recognizes, when there is "dispute as to the extent or amount of the loss, the insurer can avoid the imposition of penalties only by unconditionally tendering the undisputed portion of the claim." *La. Bag Co., Inc. v. Audobon Indem. Co.*, 999 So.2d 1104, 1115 (La. 2008); *accord Wells v. So. Fidelity Ins. Co.*, No. 18-1696, 2019 WL 118015, at *1, *4 (E.D. La. Jan. 7, 2019) (Milazzo, J.) (concluding that the insurer "reimbursed [p]laintiff the undisputed costs of repair at every stage of the claims process," by paying its own adjuster's estimate four days after it was issued and then paying "the updated costs" after appraisal was completed). In the instant motion, however, SafePoint never informs the Court whether or when it paid the $53,366.36 that its own adjuster stated it owed.[27] The Court therefore cannot

---

[25] R. Doc. No. 38-1, at 2.
[26] *Id.*
[27] It is possible that this amount was accounted for in the payment that SafePoint made after appraisal. However, the appraisal process concluded in December of 2022,

11

conclude that SafePoint is entitled to summary judgment with respect to Lighthouse Ranch's claims for penalties and attorneys fees.

>        ii.        *Motion for Summary Judgment*

The insurance policy between the parties states that it is "void if you or any other insured, intentionally conceal or misrepresent a material fact" related to the policy or insured property.[28] In its motion for summary judgment, SafePoint argues that Lighthouse Ranch "made exaggerated proof of losses as part of the claim investigation" and that "plaintiff's knowledge of the falsity is undeniable."[29]

Pursuant to Louisiana law, an insurer may avoid coverage due to material misrepresentations by the insured if (1) the insured made false statements (2) with the actual intent to deceive and (3) the misstatements materially affected the risk assumed by the insurer. *Chavez v. Homesite Ins. Co.*, 834 F. Supp. 2d 504, 507 (E.D. La. 2011).

It is undisputed that Lighthouse Ranch submitted an estimate of damages containing approximately $2.4 million, and that the appraisers' estimates were significantly lower. SafePoint argues that Lighthouse Ranch was "aware that damage occasioned by the[ ] storms was approximately $50,000," citing to a post from what appears to the plaintiff's Facebook page soliciting donations in that amount.[30]

---

approximately one year after SafePoint's adjuster's initial estimate. *See* R. Doc. No. 38-11 (appraisers' agreement dated December 14, 2022).
[28] R. Doc. No. 40-1, at 3.
[29] *Id.* at 2.
[30] R. Doc. No. 40-1, at 5; R. Doc. No. 40-11, at 1 (post from September 4, 2021, stating that "we have estimated $50,000 in damages" and soliciting donations). SafePoint

SafePoint cites no further evidence in support of its motion. Lighthouse Ranch objects that the Facebook post is unauthenticated, and further argues that a request for $50,000 in donations does not prove that later professional estimates were false.[31]

The Court finds that genuine issues of material fact preclude summary judgment on this issue, even assuming that the Facebook post is competent summary judgment evidence. "[S]ummary judgment is rarely proper when an issue of intent is involved." *Guillory v. Domtar Inds., Inc.*, 95 F.3d 1320, 1326 (5th Cir. 1996). The contention that "no reasonable juror could conclude that [Lighthouse Ranch's] [alleged] misrepresentations were not intentional" simply because it requested a lower amount in donations than it requested in insurance coverage borders on frivolous.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED THAT** the motion to confirm the appraisal award,[32] the motion for partial summary judgment,[33] and the motion for summary judgment[34] are **DENIED**.

---

provides various other posts from what appears to be Lighthouse Ranch's Facebook page soliciting donations for an expansion. R. Doc. No. 40-11.
[31] R. Doc. No. 44.
[32] R. Doc. No. 37.
[33] R. Doc. No. 38.
[34] R. Doc. No. 40.

14

New Orleans, Louisiana, March 16, 2023.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**