**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

LIGHTHOUSE RANCH FOR BOYS, INC.                    CIVIL ACTION

VERSUS                                                            No. 22-1988

SAFEPOINT INSURANCE COMPANY                        SECTION I

<u>**ORDER & REASONS**</u>

Before the Court is a motion *in limine*,[1] filed by defendant SafePoint Insurance Company ("SafePoint") to exclude the opinions and testimony of plaintiff's expert witnesses. Plaintiff Lighthouse Ranch for Boys ("Lighthouse Ranch") opposes the motion.[2] Also before the Court is a motion, filed by Lighthouse Ranch, to amend its expert witness disclosures.[3] SafePoint opposes that motion.[4] For the reasons below, the Court grants SafePoint's motion *in limine* and denies Lighthouse Ranch's motion to amend its expert disclosures.

## I.     FACTUAL BACKGROUND

This is an insurance dispute. SafePoint insured Lighthouse Ranch's property, which was damaged by both Hurricane Ida in August 2021 and Hurricane Nicholas in September 2021.[5] After a dispute arose as to the amount of payment owed under

---

[1] R. Doc. No. 39.
[2] R. Doc. No. 43.
[3] R. Doc. No. 54.
[4] R. Doc. No. 56.
[5] *E.g.*, R. Doc. Nos. 38, at 1; 42, at 1.

the policy, SafePoint invoked appraisal on the property. Appraisal was completed on December 13, 2022.[6]

The parties attempted to resolve the dispute in private mediation on January 6, 2023. After that mediation failed, the Court continued the trial, pretrial conference, and dispositive motions deadline to allow the parties to file motions regarding the appraisal award.[7] The Court recently denied SafePoint's motion to confirm the appraisal award, as well as its motions for summary judgment.[8]

## II.     LEGAL STANDARDS

### a. Motion to Amend Expert Reports and Disclosures

Federal Rule of Civil Procedure 16(b) governs requests to modify the Court's scheduling order, including requests to file expert reports after the scheduling order's deadline. The Fifth Circuit has instructed that four factors should be considered when determining whether the report of a late-designated expert witness should be allowed: (1) the importance of the proposed testimony, (2) the party's explanation for its failure to comply with the court's scheduling order, (3) the potential prejudice that would arise from allowing the testimony, and (4) the availability of a continuance to cure such prejudice. *Harmon v. Georgia Gulf Lake Charles LLC*, 476 F. App'x 31, 36 (5th Cir. 2012). A district court has "broad discretion to preserve the integrity and

---

[6] R. Doc. No. 54-1, at 2.
[7] R. Doc. No. 135.
[8] R. Doc. No. 57.

purpose of the pretrial order." *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990).

### b. Motion *in Limine*

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony. *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 588 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th Cir. 2006). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the facts of the case.

"To qualify as an expert, 'the witness must have such knowledge or experience in [his] field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth.'" *United States v. Hicks*, 389 F.3d 514, 524 (5th Cir. 2004) (quoting *United States v. Bourgeois*, 950 F.2d 980, 987 (5th Cir. 1992)).

*Daubert* "provides the analytical framework for determining whether expert testimony is admissible under Rule 702." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243 (5th Cir. 2002). Both scientific and nonscientific expert testimony is subject to the *Daubert* framework, which requires a trial court to make a preliminary assessment to "determine whether the expert testimony is both reliable and

3

relevant." *Burleson v. Tex. Dep't of Crim. Just.*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

A number of nonexclusive factors may be considered with respect to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the technique's potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 F. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining 'how to test an expert's reliability.'" (quoting *Kumho Tire*, 526 U.S. at 152)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

As for determining relevancy, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [under Rules 401 and 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "There is no more certain test for determining when experts

may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (quoting Fed. R. Evid. 702, Advisory Committee Note).

"[W]hen expert testimony is challenged under Rule 702 and *Daubert*, the burden of proof rests with the party seeking to present the testimony." *Kennedy v. Magnolia Marine Transp. Co.*, 189 F. Supp. 3d 610, 615 (E.D. La. 2016) (Africk, J.). The Court applies a preponderance of the evidence standard when performing its gatekeeping function under *Daubert. See Daubert*, 509 U.S. at 592 n.10. And the Court is not bound by the rules of evidence—except those rules concerning privileges—when doing so. *See id.*

## III.   ANALYSIS

### a.  Motion to Amend Expert Reports and Disclosures

In its motion to amend its expert reports and disclosures, Lighthouse seeks leave to withdraw its previously disclosed expert, Susan Lewis ("Lewis"), and replace her with C.J. Minor ("Minor") and Kevin Hahn ("Hahn").[9] Lighthouse Ranch explains that, after the parties attempted mediation, Minor and Hahn inspected the property and provided an estimate of damages that was significantly lower than Lewis'.[10] Lighthouse Ranch argues that SafePoint would not be prejudiced by the late

---

[9] R. Doc. No. 54-1.
[10] *Id.* at 2.

disclosure of these witnesses because "Safepoint has not yet taken depositions of any Lighthouse witnesses and Safepoint was provided the reports of Mr. Minor and Mr. Hahn on February 8, 2023."[11] Lighthouse Ranch further emphasizes that the appraisal of the property, initiated by SafePoint, was not completed until after the expert disclosure deadline had passed.[12]

Plaintiff's deadline to provide expert reports and disclosures was November 10, 2022.[13] Though Lighthouse Ranch acknowledges that its request to amend its expert reports and disclosures is untimely, its motion does not discuss the standard applicable to such a request. As previously stated, requests to modify a scheduling order are governed by the Rule 16(b) "good cause" standard. Applying this standard to the instant matter, the Court concludes that Lighthouse Ranch has not demonstrated good cause.

The first factor arguably weighs in favor of Lighthouse Ranch's request, as expert testimony is no doubt important to its case. *Harmon*, 476 F. App'x at 36. However, the second, third, and fourth factors weigh against granting the motion.

As to the second factor, Lighthouse Ranch's explanation focuses on the fact that the appraisal process was not completed until after the expert deadline had passed. However, it is not clear why Lighthouse Ranch waited until completion of the appraisal award to obtain a second opinion with respect to Lewis' estimate. Additionally, Lighthouse Ranch itself notes that the appraisal process was completed

---

[11] *Id.* at 3.
[12] *Id.*
[13] R. Doc. No. 14, at 2.

on December 13, 2022, and that Minor and Hahn inspected the property on January 17, 2023, but the instant motion was not filed until March 3, 2023. Lighthouse Ranch does not explain this delay.

As to the third factor, allowing Lighthouse Ranch to amend its expert witness disclosures would be prejudicial to SafePoint because the deadline for filing motions *in limine* with regard to expert testimony has passed.[14] *Id.* SafePoint indicates that it has identified grounds to challenge the testimony of Minor and Hahn, but it would be unable to file the appropriate motions without an accompanying extension of the relevant deadline.[15]

Finally, as to the fourth factor, the Court has already continued this matter in an attempt to facilitate its resolution,[16] and Lighthouse Ranch has not satisfied the Court that a further continuance is warranted under the circumstances. *Id.* The pretrial conference in this matter is less than a month away.[17] As stated above, Lighthouse Ranch's explanation for the timing of the instant motion indicates unwarranted delay. Therefore, granting a continuance at this stage "would result in unnecessary delay and expense, and 'a continuance would not deter future dilatory behavior, nor serve to enforce . . . court[-]imposed scheduling orders.'" *Thonn v. MLH*

---

[14] R. Doc. No. 35 (extending this deadline to February 8, 2023).
[15] R. Doc. No. 56, at 5.
[16] *See* R. Doc. No. 35.
[17] *See id.*

*Realty, LLC*, No. 11–2123, 2012 WL 6482991, at *2 (E.D. La. Dec. 12, 2012) (Africk, J.) (quoting *Geiserman*, 893 F.2d at 792).

Because Lighthouse Ranch has not shown that it has good cause to modify the scheduling order, its motion to amend its expert reports and disclosures will be denied. Having so concluded, the Court turns to SafePoint's motion regarding Lighthouse Ranch's timely disclosed experts.

### b.  Motion *in Limine*

SafePoint argues that the opinions of Lewis and Henry LaBrie ("LaBrie") should be excluded. The Court addresses the arguments pertaining to Lewis and Henry in turn.[18]

### i.      Lewis

Lewis is designated as an expert insurance adjuster who is expected to testify as to the nature and cause of the damage to plaintiff's property. SafePoint does not challenge her qualifications, but rather argues that her opinions are irrelevant and unreliable. The opinions offered in Lewis' 606-page report are contained in just seven sentences:

> The water causing the and these issues of type [sic] damages is category 3 water according to ANSI/IICRC S500.
> This category of water requires remove [sic] and replacement of materials.

---

[18] Lighthouse Ranch requests permission to withdraw Lewis as an expert in its motion for leave to amend its expert disclosures. However, the Court assumes that Lighthouse Ranch would not withdraw Lewis unless it were allowed to replace her with Hahn and Minor, its proposed new experts. Therefore, as the Court has denied Lighthouse Ranch's motion to amend its expert disclosures, it will address the merits of SafePoint's motion regarding Lewis.

> After surveying the area for wind damages, evidence of tornadic activity was discovered within the area.
> The vibration and movement of the structure of home more likely than not caused plumbing pipe damages as well as electrical wiring damages.
>
> Due to the impact of the coronavirus pandemic, Hurricane Ida, and Hurricane Nicholas, costs have significantly increased for this area for limited labor, materials, and equipment.
>
> Prices also reflect Subcontractor overhead and profit. General contractor overhead and profit will be addressed on the subtotal cost of the estimate by the standard ten and ten percentage [sic].[19]

The remainder of the report consists of itemized estimates of the cost of repairs to the property and photographs of the damage Lewis attributes to the storms. Lewis offers no explanation to connect her opinions to the estimates and photographs.

This Court recently excluded identical opinions offered by Lewis in another case. *Wunstell v. Clear Blue Specialty Ins. Co.*, No. 22-975, 2022 WL 6113109, at *4 (E.D. La. Oct. 7, 2022) (Africk, J.). In *Wunstell*, the Court concluded that Lewis' opinions as to causation were conclusory and lacked foundation, and that they therefore failed to satisfy the requirements of Rule 26(a)(2)(B). *Id.* at *5.

Unlike in *Wunstell*, the parties in the instant matter disagree as to whether Lewis was required to provide a written report under Rule 26(a)(2)(B), or whether

---

[19] R. Doc. No. 43-1, at 1. In its motion, SafePoint produced an incorrect version of Lewis' report. R. Doc. No. 39-5. That report contains the same opinions provided above, except that it references different storms. The Court notes that this is the second time that SafePoint has produced an incorrect document in connection with a motion in this matter. *See* R. Doc. No. 57 (this Court's order and reasons noting that SafePoint produced an inaccurate version of the appraisal provision in connection with a motion to confirm the appraisal award and a motion for summary judgment). Any future submissions by SafePoint should be accurate and not require the Court to question their reliability. Sanctions may be appropriate for future transgressions.

she was merely required to provide the disclosures mandated by Rule 26(a)(2)(C). Rule 26(a)(2)(B) states that a witness who is "retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony" must provide a written report containing specific information. In contrast, pursuant to Rule 26(a)(2)(C), an expert who "is not required to provide a written report" must provide only disclosures stating the subject matter on which they plan to testify and "a summary of the facts and opinions" they plan to offer.

Lighthouse Ranch argues that Lewis is required only to provide the Rule 26(a)(2)(C) disclosures because she "was hired by Lighthouse before counsel was involved."[20] This fact appears to be undisputed.[21] However, the fact that Lewis was retained prior to counsel's involvement does not establish that Lewis was not "retained or specially employed to provide expert testimony" in this matter. Fed. R. Evid. 26(a)(2)(B). Lighthouse Ranch does not further explain its arrangement with Lewis, simply stating that she is "analogous to a treating physician" and that disclosure pursuant to Rule 26(a)(2)(C) is therefore appropriate.[22]

"If parties who designate an expert do not disclose a report under Rule 26(a)(2)(B), they bear the burden of demonstrating that their designated expert is not

---

[20] R. Doc. No. 43, at 4.

[21] In a prior motion, SafePoint stated that "plaintiff retained Susan Lewis—not counsel." R. Doc. No. 40-1, at 8.

[22] The Court notes that the purported disclosure offered by Lewis in this case is substantially identical to that offered in *Wunstell*, wherein Lewis was undisputedly offered as a retained expert pursuant to Rule 26(a)(2)(B).

one retained or specially employed to provide expert testimony in the case, and not one whose duties as an employee of the party regularly involve giving expert testimony." *Lee v. Valdez*, No. 07-1298, 2008 WL 4287730, at *2 (N.D. Tex. Sept. 18, 2008) (quotation and citation omitted); *accord Beechgrove Redev., LLC v. Carter & Sons Plumbing, Heating, & Air Conditioning, Inc.*, No. 07-8446, 2009 WL 981724, at *6 n.3 (E.D. La. Apr. 9, 2009) (Barbier, J.). Lighthouse Ranch has not made this showing. Accordingly, the Court lacks a basis for concluding that Lewis is appropriately designated as a non-retained expert pursuant to Rule 26(a)(2)(C). In *Wunstell*, this Court concluded that Lewis' report—which offered conclusions identical to those offered here—failed to meet the standard articulated by Rule 16(a)(2)(B). 2022 WL 6113109, at *5. The same result appears mandated here.

Moreover, even assuming that Lewis is appropriately disclosed as a non-retained expert pursuant to Rule 26(a)(2)(C), her opinions are still subject to the requirements of Rule 702 and the standards of *Daubert*. *Tajonera v. Black Elk Energy Offshore Ops.*, No. 13-0366, 2016 WL 3180776, at *7 (E.D. La. June 7, 2016) (Brown, J.) ("[A]lthough *Daubert* and its progeny often discuss specially retained experts, Rule 26(a)(2)(C) experts who provide expert opinions pursuant to Rule 702 may also be challenged under *Daubert*."); *accord Higgins v. Koch Dev. Corp.*, 794 F.3d 697, 704 (7th Cir. 2015) (""Treating physicians [who offer disclosures pursuant to Rule 26(a)(2)(C)] are no different than any other expert for purposes of Rule 702; before proffering expert testimony, they must withstand *Daubert* scrutiny like everyone else."); *MGMTL LLC v. Strategic Tech.*, No. 20-2138, 2022 WL 474161, at *5 (E.D. La.

11

Feb. 16, 2022) (Vitter, J.) ("Regardless of whether a witness is proffered as a retained expert or as a non-retained expert, the witness must still satisfy the requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and Fed. R. Evid. 702." (footnotes omitted)). Accordingly, "analysis regarding reliability under *Daubert* may differ when assessing a Rule 26(a)(2)(B) expert compared to a Rule 26(a)(2)(C) expert only to the extent that the Court will need to take into account the information that the expert relied upon in coming to his or her conclusion, as a Rule 26(a)(2)(C) expert is confined to testifying only to opinions that arise from his or her ground-level involvement in the events giving rise to the litigation." *Tajonera*, 2016 WL 3180776, at *7 (quotations and citations omitted).

The Court finds that Lewis' opinions fail to meet the reliability requirements of Rule 702 and *Daubert*. As stated, Rule 702 requires that experts' opinions be "based on sufficient facts or data" and be "the product of reliable principles and methods," which are "reliably applied . . . to the facts of the case." As in *Wunstell*, Lewis's brief and unclear statements provide little clue as to the basis of her opinions or her methods. Curiously, Lighthouse Ranch makes little effort to meaningfully distinguish the instant matter from *Wunstell*, focusing only on the argument that, here, Lewis is allegedly offered as a non-retained expert pursuant to Rule 26(a)(2)(C). As discussed above, the Court does not find that argument convincing. However, even assuming that Lewis does not need to provide a full report, neither her disclosures in this matter nor Lighthouse Ranch's briefing provide a basis for concluding that her opinions are based on sufficient facts or data, nor that they are the product of reliable principles

and methods reliably applied to the facts of the case. Fed. R. Evid. 702. Lewis'

opinions will therefore be excluded.[23]

*ii.*    *LaBrie*

Lighthouse Ranch's witness list states that LaBrie is a "building consultant"

who will testify "regarding his assistance with the inspection of the property."[24]

LaBrie is not designated as an expert, and he did not offer an expert report or

disclosure pursuant to Rule 26. SafePoint argues that his testimony will be that of an

expert because "he participated in the previous mediation in this matter and offered

opinions as to the necessity of moisture readings in the subject buildings."[25] In

response, Lighthouse Ranch argues that LaBrie is not offered as an expert witness,

and that the *Daubert* motion is therefore unnecessary as pertains to him.[26]

Because both parties agree that LaBrie has not complied with the rules

governing expert testimony, the Court does not need to further address SafePoint's

arguments regarding his testimony. LaBrie will be allowed to testify only as a fact

witness in this matter.

## IV.    CONCLUSION

For the foregoing reasons,

---

[23] Having so concluded, the Court does not address the parties' arguments regarding
the relevance of Lewis' opinions.
[24] R. Doc. No. 30, at 1.
[25] R. Doc. No. 39-1, at 8.
[26] R. Doc. No. 43, at 6.

**IT IS ORDERED THAT** Lighthouse Ranch's motion to amend its expert witness reports and disclosures is **DENIED**.

**IT IS FURTHER ORDERED** that SafePoint's motion *in limine* to exclude the expert testimony of Lewis and LaBrie is **GRANTED**. To the extent either Lewis or LaBrie is a competent fact witness in this matter, their testimony will be permitted; however, neither will be allowed to testify as to matters within the purview of Rule 702.

New Orleans, Louisiana, March 23, 2023.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**